**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald Jack PRIEST,
Defendant-Appellant.**

**No. 77–1914.**

United States Court of Appeals,
Tenth Circuit.

Submitted March 12, 1979.

Decided March 29, 1979.

**1384**

Joseph F. Dolan, U. S. Atty., and Donald M. Hoerl, Asst. U. S. Atty., Denver, Colo., for plaintiff-appellee.

Daniel J. Sears, Federal Public Defender and Michael S. Axt, Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY, Chief Judge.*

McWILLIAMS, Circuit Judge.

Donald Jack Priest was convicted by a jury under a three-count indictment charging the illegal possession of a sawed-off shotgun under 26 U.S.C. § 5861(d), the illegal transfer of the same sawed-off shotgun under 26 U.S.C. § 5861(e), and the illegal making of the same sawed-off shotgun under 26 U.S.C. § 5861(f). He was sentenced to the custody of the attorney general for a period of five years on each count, such sentences to be served concurrently.

Only a brief review of the evidence is necessary to place this controversy in focus. The Government's evidence established that Priest and his friend, one Robert Myers, sold a sawed-off shotgun to a special agent in the Bureau of Alcohol, Tobacco and Firearms for $25. The sale was arranged by an informant, who was present at the time of the transfer, and who testified at trial regarding the details of the sale. Other evidence showed that the shotgun in question was not registered in the National Firearms Registration and Transfer Record and that Priest had not made a written application to either make or transfer the firearm. Priest elected not to testify, nor did he call any witnesses in his own behalf.

At the close of the Government's case Priest moved for a directed verdict of not guilty "on the ground that the Government has failed to submit the requisite burden of proof; . . .. That's all I will submit on that so far as the motion is concerned." This motion was denied. On appeal, counsel, for the first time so far as we can ascertain, contends that there is insufficient evidence to show that the shotgun in question was "operable." Assuming that this particular matter may be raised in this belated fashion, we are nonetheless convinced that it is without real merit.

26 U.S.C. § 5845 includes within the definition of a "firearm" a "shotgun," with the latter then being defined. Such definition states, *inter alia*, that a shotgun shall include any weapon "which may be readily restored to fire a fixed shotgun shell." 26 U.S.C. § 5845(d). Under this rather broad definition we are convinced that the Government's evidence in the instant case established, at least *prima facie*, the requirements of the statute. Indeed, statements attributed to Priest by Government witnesses tended to show that the shotgun was in fact operable. The evidence concerning operability is legally sufficient.

Several Government witnesses testified that shortly after the transaction in question they made a written record of their recollection of events. Such were then transcribed into typewritten form, and the original notes were apparently de-

---

* Of the U. S. Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

stroyed. At least one, if not more, of these witnesses indicated that he had compared the typewritten record with his original notes, and that the former was a true and accurate copy of the latter. All typewritten records were afforded defense counsel for inspection. However, defense counsel did complain about the fact that the original notes of these witnesses had been destroyed, and moved to strike their testimony on that ground. The trial court denied the motion to strike, but at the same time indicated its disapproval of the practice of this particular Government Agency in destroying such material. Under the circumstances, we think the trial court handled this particular matter correctly.

There was nothing to indicate a bad faith on the part of Government officials or any real prejudice to the defendant. The trial court was advised that this particular practice was being changed. For illustrative cases holding that where there is neither bad faith nor prejudice, the destruction of rough interview notes does not warrant the imposition of sanctions upon the Government in its presentation of evidence, see *United States v. Stulga*, 584 F.2d 142 (6th Cir. 1978); *United States v. Martin*, 565 F.2d 362 (5th Cir. 1978); and *United States v. Dupree*, 553 F.2d 1189 (8th Cir. 1977).

■ The final assignment of error relates to the trial court's rejection of an offer of proof that, if a particular person were called as a defense witness, he would testify that on a prior occasion Priest had himself acted as an informant for the Colorado Bureau of Investigation and that he had provided helpful information relative to a murder investigation and another investigation concerning a counterfeiting ring in Craig, Colorado. The trial court rejected this offer on the ground that the proffered evidence was irrelevant and immaterial to any issue in the case at hand. We agree. The admissibility of this type of evidence is peculiarly within the discretion of the trial court, and we find no abuse of that discretion here. In this general regard, see *Unit-*

*ed States v. Nolan*, 551 F.2d 266 (10th Cir. 1977), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977) and *Young v. Anderson*, 513 F.2d 969 (10th Cir. 1975).

Judgment affirmed.